Argued November 28, reversed and remanded December 15, 1972

STATE OF OREGON, *Respondent, v.* JIMMY
DALE CLAYTON (No. C-72-02-0460 Cr), *Appellant.*

504 P2d .139

*John K. Hoover,* Deputy Public Defender, Salem,

argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

## THORNTON, J.

Defendant was found guilty after jury trial of the crime of illegal sale of heroin. ORS 474.020.[1] The trial judge suspended imposition of sentence and placed defendant on probation for five years on the condition that he complete the NARA program.

On appeal defendant's sole assignment of error is that the court erred in denying defendant's motion for a new trial.

On the night of November 1, 1971, Officers Wilson and Panit of the Portland Police Bureau were operating as undercover agents in the Williams Avenue area of that city. While driving along this avenue, the officers observed a person waving at them from the sidewalk. Officer Wilson testified that after they had stopped, the individual asked them if they wanted some heroin, and Panit replied that he did. The two waited in their automobile while the person crossed the street, returned and got into the back of the officers' car. Two bags of heroin were then exchanged for $20. The sale took approximately two or three minutes.

---

[1] ORS 474.020 was repealed by Oregon Laws 1971, ch 743, § 432, and replaced by ORS 167.202 et seq.

Wilson testified that he had seen the defendant previously and that a report written by Panit on the same night as the sale, indicated the subject involved was labeled "John Doe aka Jimmy." The description in the report was as follows: "18-19 years old, five feet four inches tall, 125 pounds, dark complexion, light mustache, black hair, brown leather jacket and black felt hat."

In order to preserve the 'cover' of the officers during a lengthy period of time during which numerous other 'buys' were made, defendant was not arrested until February 16, 1972. Panit testified that on February 16, 1972, he recognized the subject standing by a Chevy II on Williams Avenue. He transmitted a message to Officer Giani who subsequently placed defendant under arrest. Wilson, who was with Panit on both occasions, testified that defendant was again wearing a leather coat and hat. Panit testified that earlier on the date of the arrest the defendant had pulled up beside him in an off-white 1962 Chevy II and asked him if he was looking for anything and that he had it "good." Both Wilson and Panit identified the defendant as the person involved in the heroin sale.

The defendant took the stand and testified that he was not involved in the drug sale on November 1, 1971, and that he had never sold heroin. He further testified that he had never used another name and first heard the name James Bell Storey in court on the day after he was arrested. The defendant testified he weighed about 143 pounds, was five feet five inches tall and was 20 years old; that he had never seen either Officer Wilson or Officer Panit before.

The indictment was originally entitled *State of Oregon v. James Bell Storey* apparently because Panit,

who purchased the heroin in question from defendant and who knew defendant only as "Jimmy," had incorrectly identified defendant as Storey after examining a police photograph of Storey which apparently resembled defendant. Before defendant was arraigned his true name was brought to the attention of the prosecutor, and upon arraignment the name of Jimmy Dale Clayton was added to the indictment as allowed by ORS 132.720 and 135.350.

In his motion for new trial defendant argued that he had discovered, since the trial, two items of evidence which warranted a new trial, namely, (1) the original, mistaken photographic identification of Storey as the seller of the heroin in question, and (2) the fact that during subsequent proceedings the state had apparently acknowledged that defendant and Storey were two different persons. On appeal, defendant adds the further contention that the failure of the prosecution to advise defendant of the mistaken photographic identification constitutes suppression of evidence favorable to him by the state.

About two weeks after defendant's trial and conviction, his defense counsel was contacted by the district attorney's office regarding a new charge— "State of Oregon vs. James Bell Storey, Jr., whose true name is Jimmy Dale Clayton." The district attorney's office advised defendant's counsel that they had discovered an error in charging defendant herein as the defendant in the second indictment (for forgery), and that the real James Bell Storey, Jr., was an individual other than defendant herein; that the true Storey would be taken into custody shortly; and that defendant herein would not be prosecuted on the forgery charge.

■ Motions for new trial based on newly discovered evidence are addressed to the discretion of the trial court, but are not favored. The often-repeated list of standards to be applied to such evidence is set forth in *State v. Williams,* 2 Or App 367, 468 P2d 909 (1970).

"In applying the requirements for allowance of a new trial, it seems most reasonable to consider them as only three separate requirements. Any application for new trial must meet the first three requirements: (1) (probably change the result), (2) (discovered since trial) and (3) (could not have been discovered before the trial by due diligence). *State v. Truxall,* 2 Or App 214, 467 P2d 643 (1970). Requirements (4) (material to the issue), (5) (not cumulative) and (6) (not merely impeaching or contradictory of former evidence) should only be considered part of requirement (1). If the answer to requirement (1) is affirmative, requirements (4), (5) and (6) should not prevent the granting of a new trial, for to do otherwise would be letting procedure and form trample over merit and substance." 2 Or App at 372-73.

■ We believe that the claimed newly discovered evidence in this case meets the standards laid down in ORS 17.610 and *Williams.* After reviewing the entire record we are not prepared to say that this evidence of mistaken identity might not have changed the result of this case.

Reversed and remanded.