Argued and submitted November 30, 1984, sentence modified December 26, 1985

# STATE OF OREGON,
*Respondent,*

*v.*

# TIMOTHY J. RICHARDSON,
*Appellant.*

(145,615, 144,960; CA A31546 (control), A31547)
(Cases Consolidated)

711 P2d 201

Ernest E. Estes, Salem, argued the cause for appellant. On the brief were Gary D. Babcock, Public Defender, and Helen I. Bloch, Salem.

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant was convicted by a jury of attempted murder, ORS 161.405, 163.115, and first-degree robbery. ORS 164.415. The trial court sentenced him on the attempted murder conviction to 20-years imprisonment, with a 10-year minimum pursuant to ORS 144.110 and a 5-year minimum for the use of a firearm pursuant to ORS 161.610, the minimums to run concurrently. On the robbery conviction, he was sentenced to 10-years imprisonment, with 5-year concurrent minimums pursuant to ORS 161.610 and 144.110. The sentences for the two crimes are to run consecutively. On appeal, defendant contends that the two convictions should have been merged or, in the alternative, that cumulative sentences are improper. He also argues here, although he did not below, that only one five-year minimum may be imposed. We modify the judgment by deleting the second five-year minimum under ORS 161.610; otherwise we affirm.

Defendant entered a retail establishment and pointed a cocked revolver at the only person present, a salesman. He demanded money, and the salesman took money from the floor safe and the cash register and put it in a bag. He then asked defendant what he should do next. Defendant ordered him to put the money on a desk and then walk to the back of the store; he did so. Defendant followed the salesman toward the back of the store and ordered him to enter a restroom. As the salesman reached for the door handle, he was shot in the back, fell inside the restroom and locked the door behind him. A few minutes later, he emerged to telephone for help. By that time, defendant and the money were gone.

But for the problem we discuss below, there would be no question that the facts would permit separate convictions for first-degree robbery and for attempted murder. To support the Robbery I conviction, it was necessary to prove that defendant, in the course of committing theft, used or threatened the immediate use of physical force on the victim with the intent of compelling the victim to deliver the property and that he was armed with a deadly weapon or used or attempted to use a dangerous weapon. ORS 164.415. It is clear that defendant threatened the use of a gun with which he was armed with the intent to compel the victim to deliver the money. The victim did deliver the money when he placed it in

a bag and, pursuant to instructions, put the bag on the desk. The robbery was completed without a shot being fired.

Thereafter, whether to facilitate his escape, to eliminate a witness or simply out of fright or meanness, defendant shot the victim before leaving the premises with the money. As the jury necessarily found, he did so with the intent to kill. It seems clear, then, that all of the elements of the robbery charge were not necessarily included in the commission of the attempted murder and that all of the elements of the attempted murder were not included in the robbery. Accordingly, this is not a situation in which "true" merger is required.

■ ■ We turn to the question of whether the legislature intended that separate convictions and sentences could be imposed in this situation, that is, whether there is more than one type of behavior which the legislature intended to prevent separately. *State v. Harris,* 287 Or 335, 342, 599 P2d 456 (1979). Although it is no panacea, the principal test suggested by the legislature and approved by the courts for determining whether multiple convictions and sentences may be imposed for acts closely connected in time and place is the test of "criminal objective." *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979). Violation of separate statutes by separate acts against the same victim for separate criminal objectives will support separate convictions and separate sentences. *State v. Cloutier, supra,* 286 Or at 598-99; *State v. Strickland,* 36 Or App 119, 584 P2d 310 (1978). Here, in order to have convicted defendant of both attempted murder and first-degree robbery, the jury necessarily found both an intent to kill, ORS 161.405(1); ORS 163.115(1)(a), and an intent to take or retain property, ORS 164.415; 164.395, each of which is a separate criminal objective.

The jury verdict of separate criminal objectives is justified by the record. Because defendant had separated the money from the victim and had control over it before he directed the victim to go to the back of the store, he had already achieved his objective of taking property before he shot the victim as he entered the restroom.

> "* * * One may have fully achieved the immediate goal of the particular offense committed toward a victim although one has not gained one's wider objective. * * *

"* * * It is not necessarily true that a continuous sequence of criminal acts directed at a single victim can lead to only one sentence.* * *" *State v. Kessler,* 297 Or 460, 465, 686 P2d 345 (1984).

On the evidence adduced by the state and necessarily accepted by the jury, *State v. Fickes,* 36 Or App 361, 584 P2d 770 (1978) and *State v. Steele,* 33 Or App 491, 577 P2d 524 (1978), *rev den* 285 Or 195 (1979), are not controlling. The rule established by those cases is that separate convictions may not be entered "when the state relies upon precisely the same act to establish the use-physical-force element of robbery and the cause-physical-injury element of assault * * *." *State v. Steele, supra,* 33 Or App at 497. *State v. Fickes, supra,* extended that principle to attempted murder and robbery. However, in *Fickes,* the defendant had used physical force to compel the victim to deliver his wallet and had contemporaneously thrown the victim into a log pond to overcome resistance to retention of the wallet. Here, there is no evidence of the use of force to obtain the money; the victim did as he was told and did not resist. The shooting occurred afterward, and it was the state's theory that defendant intended to kill the victim in order to eliminate a witness. *Fickes* does not apply when the state proves, as here, separate acts to establish the elements of separate crimes with different criminal objectives. *See State v. Keys,* 54 Or App 575, 578, 635 P2d 1039 (1981), *rev den* 292 Or 568 (1982), in which the injury used to establish assault was a gratuitous injury not necessary to the robbery.

Here, the shooting was not necessary to the robbery, and the state proved separate acts at trial: defendant pointed a gun at the victim to persuade him to turn over the money. Pointing a gun satisfies the "threatens the immediate use of physical force" element of third-degree robbery, ORS 164.395(1), and being armed with a deadly weapon justifies raising the third-degree robbery charge to first-degree robbery. ORS 164.425(1)(a). We do not believe that the legislature, by establishing separate criminal intents in separate statutes directed at protecting separate interests, intended that a defendant, having completed the robbery, could thereafter attempt to murder the victim with impunity.

Defendant, however, contends that we may not reach

that result, because the language of the first-degree robbery indictment precludes it:

> "* * * [Defendant] did then and there unlawfully and knowingly *use* physical force upon [victim], while armed with a deadly weapon, a handgun, while in the course of committing theft of property, with the intent of preventing resistance to the said defendant's taking of the said property * * *." (Emphasis supplied.)

He argues that, because the indictment refers only to the *use* of physical force, and not to "threatens the immediate use of physical force," as provided by ORS 164.395(1), his robbery and attempted murder convictions are both based on the same use of force—shooting the victim—a result prohibited by our decision in *State v. Fickes, supra.* Defendant is correct only if the state was confined by the indictment in its proof to "use" rather than "threatened use" of physical force.

■■   An indictment need not strictly follow the words of a statute. ORS 132.540(3). The "acts constituting the offense" must be stated "in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended * * *." ORS 132.550(7). When the acts alleged in an indictment constitute a crime, even though all of the particular acts constituting the elements of the crime are not set forth, the indictment is sufficient if the defendant does not challenge it. *State v. Smith,* 182 Or 497, 506-07, 188 P2d 998 (1948).

■   An indictment may be supplemented by the statutory language, and the pretrial discovery process protects a defendant from surprise. Here, there is no contention that the state's proof of threatened use of force came as a surprise to defendant. Because the jury instructions are not a part of the record before us, we must assume that the jury was properly charged in the statutory language and that it found, from uncontradicted evidence, that there was a threat of force during the robbery, independent of the later shooting. We conclude that two convictions were proper.

■   The question remains whether defendant may be sentenced for both convictions. In view of defendant's multiple criminal objectives, each of which violated separate statutes, we conclude that he may be. *State v. Garcia,* 288 Or 413, 605 P2d 671 (1980); *State v. Cloutier, supra.*

■ However, defendant was sentenced to two consecutive minimum sentences of five years for use of a firearm under ORS 161.610. *State v. Hardesty,* 298 Or 616, 695 P2d 569 (1985), holds that the imposition of multiple firearm minimums is not permissible when the convictions arise out of the same criminal transaction, even when there are multiple criminal objectives. Although this issue was not raised in the trial court, it is error appearing on the face of the record. The state concedes that, if we reach that question, the second firearm minimum should not have been imposed.

Sentence modified to delete second minimum sentence under ORS 161.610; affirmed as modified.