Argued and submitted September 26, 1990; resubmitted In Banc October 9,
in CA A60589 reversed and remanded for new trial; in CA A60839 and CA A61030,
affirmed December 11, 1991

## STATE OF OREGON,
*Respondent,*

*v.*

## ANTONIO QUINTERO, SR.,
*Appellant.*

(88C22022; CA A60589 (Control))

## STATE OF OREGON,
*Respondent,*

*v.*

## HIPOLITO VILLARREAL,
*Appellant.*

(88C22023; CA A60839)

## STATE OF OREGON,
*Respondent,*

*v.*

## MIGUEL QUINTERO,
*Appellant.*

(88C22024; CA A61030)
(Cases Consolidated)

823 P2d 981

Steven H. Gorham, Salem, argued the cause and filed the brief for appellant Antonio Quintero, Sr.

Kevin T. Lafky, Salem, argued the cause and filed the brief for appellant Hipolito Villarreal.

David B. Kuhns, Salem, argued the cause and filed the brief and the supplemental brief for appellant Miguel Quintero.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Lauri Alsup and Marianne M. Ghim, Certified Law Students, Salem.

DEITS, J.

## DEITS, J.

This case began with joint indictments against defendants. They appeal their convictions for attempted aggravated murder, ORS 161.405(2)(a), ORS 163.095; attempted manslaughter, ORS 161.405(2)(b), ORS 163.118; assault, ORS 163.165, ORS 163.175, ORS 163.185; and burglary. ORS 164.225.[1] They make a total of twenty-eight assignments of error.

In October, 1988, Mercedes Quintero, the sister of the defendants Quintero, became intoxicated while socializing with Barbosa, one of the victims. She was unable to drive or even walk, and Barbosa and another of the victims took her home. When she arrived home, her family was alarmed by her condition, and they called an ambulance. Antonio Quintero saw the ambulance arrive at his sister's home and ran there from a nearby store to see what was happening. Seeing his sister's condition, he concluded that the men that she had been with had drugged and beaten her. He argued with Barbosa, threatened him and slapped him. Later that evening, at least eight of Mercedes' family members and friends drove to the mobile home of the four victims "to retrieve [her] pick-up." Mercedes approached the home, knocked and called for Barbosa. When the door opened, several members of the group entered it. Before the Quintero family and friends left the scene, Barbosa had been beaten with a tire iron and he and two of the other occupants of the trailer had been shot and stabbed. The fourth occupant testified that a gun was put to his head and the trigger pulled, but the weapon did not discharge.

■ Defendant Antonio Quintero argues that his conviction should be reversed, because the video record of this trial is inadequate to protect his due process rights and because "the video transcript [sic] is much more difficult to prepare an appeal from than the regular written transcript."

---

[1] Antonio Quintero was convicted on four counts of attempted aggravated murder, two counts of second degree assault, one count of first degree assault and one count of first degree burglary. Miguel Quintero was convicted on one count of attempted aggravated murder, three counts of attempted first degree manslaughter, two counts of second degree assault, one count of third degree assault and one count of first degree burglary. Hipolito Villarreal was convicted on four counts of attempted first degree manslaughter, one count of third degree assault, two counts of second degree assault and one count of first degree burglary.

Although review of a video recording may be more difficult and time consuming for the parties and reviewing courts on appeal, that, in itself, does not provide a basis for reversal.

■ Antonio also contends that the use of the videotape prevented him from effectively processing his appeal, because the video record did not include the cross-examination of one witness. He asserts that he was forced to rely on the memory of trial counsel as to whether the cross-examination did take place and whether any colorable error occurred during that cross-examination. That is true, however, of any alleged omission in a record. If a defendant can (1) show due diligence in attempting to find and supply a record for the purposes of appeal; and (2) make at least a *prima facie* showing of error, unfairness or a miscarriage of justice in the portions of the trial for which the record is allegedly missing, he may be entitled to a new trial. ORS 19.130(3),[2] however, does not mandate reversal. Because defendant does not even assert that there was a colorable error in the portion of the video transcript allegedly missing, he has not made a showing sufficient to justify reversal. *See Smith v. Custom Micro, Inc.*, 311 Or 375, 811 P2d 1371 (1991).[3]

■ Defendant Villarreal assigns error to the trial court's denial of his pretrial motion to sever his trial from the others.[4] ORS 136.060(1) provides:

"Jointly charged defendants shall be tried jointly unless the court concludes that it is clearly inappropriate to do so and orders that a defendant be tried separately. In reaching

---

[2] ORS 19.130(3) provides:

"Whenever it appears that an appeal cannot be prosecuted, by reason of the loss or destruction, through no fault of the appellant, of the reporter's notes or audio records, or of the exhibits or other matter necessary to the prosecution of the appeal, the judgment appealed from may be reversed and a new trial ordered as justice may require."

[3] Antonio also argues that the video recording of the trial violates Canon 3(A)(7) of the Oregon Code of Judicial Conduct. His argument is unpersuasive.

[4] There were also a number of motions for separate trials by defendants during the trial. We will not address those motions as part of this assignment of error, because a motion for separate trial must be made before the commencement of trial. *See State v. Satre*, 28 Or App 201, 204, 560 P2d 286 (1977). The grounds for the motions for separate trials made during trial were also asserted as grounds for mistrial, however, and we will address the arguments as part of that assignment of error.

its conclusion the court shall strongly consider the victim's interest in a joint trial."

We review denial of the motion to sever, therefore, to determine whether it was "clearly inappropriate" to try these defendants together. *State v. Umphrey*, 100 Or App 433, 437, 786 P2d 1279, *rev den* 309 Or 698 (1990).

■ The basis of the motion related to evidence of admissions that defendant Antonio had made to his son and to a friend, Montalvo. Villarreal argued that the statements of those two witnesses would be admissible against Antonio as admissions against interest[5] but would be inadmissible against him, because they are hearsay. He asserted that, if he were tried jointly with the other defendants, those statements would be prejudicial to him. The trial court concluded that redaction of Antonio's admissions, with the deletion of inculpatory references to his codefendants, would sufficiently protect their interests and eliminate any need to sever the trials. That was not error.[6]

Defendants also assign error to a number of decisions by the trial court that allowed the testimony of Lila Quintero, Antonio's wife. Defendants objected to her testimony, moved to strike it and argued that allowing her testimony required a mistrial.[7] The court overruled the objections and denied the motions. During trial, the state called

---

[5] OEC 801(4) provides, in part:

"A statement is not hearsay if:

"* * * * *

"(b) *Admission by Party-Opponent.* The statement is offered against a party and is:

"(A) That party's own statement, in either an individual or representative capacity * * *."

[6] On appeal, Villarreal also asserts as a basis for his motion to sever the prejudice allegedly caused to him by the testimony of Lila. The potential for problems with her testimony, however, was not presented to the trial court as part of the motion to sever. As we stated in *State v. Tyson*, 72 Or App 140, 143 n 3, 694 P2d 1003, *rev den* 299 Or 37 (1985):

"Appellate review * * * in this context (a motion to sever) should center on the circumstances as they appeared at the time the motion was ruled on. It would be improper to evaluate the decision *post facto*, that is, in the light of all the facts which were adduced at trial."

[7] During trial, the court advised the parties that a motion made by one defendant would be deemed to have been made by all three.

Lila as a witness. Before she was called to the stand, the attorneys discussed with the court, outside the presence of the jury, potential problems with her testimony. The court was advised that she did not want to testify against her husband and that she intended to assert the husband-wife privilege under OEC 505.

Villarreal and Miguel Quintero objected that her exercise of the privilege would conflict with their confrontation rights under the Sixth Amendment and Article I, section 11, of the Oregon Constitution and that, if she testified about them, they had a right to cross-examine her fully, including questioning her about the actions of the codefendant, Antonio, her husband. The trial court concluded that Miguel's and Villarreal's confrontation rights were superior to the witness' statutory privilege. It ordered her to testify and appointed counsel to advise her on the exercise of her privilege. Before she testified, the court instructed the jury that her testimony was not to be considered against her husband and directed the state not to question her about her husband's involvement.

On direct examination, the state limited its questions to the witness' own activities that evening and to what she had seen Villarreal and Miguel do. On cross-examination, however, problems arose. When defense counsel asked her questions about what she had seen that night, such as who had been at the mobile home, she asserted the privilege. In every instance but one, the court ordered her to answer the question. On cross-examination by counsel for Miguel, Lila was ordered to answer whether she had told Antonio to stop hitting someone. On cross-examination by counsel for Villarreal, she was ordered to answer whether she had heard Antonio say that he had run out of bullets. Her answers were affirmative. Eventually, however, she simply began to have difficulty "recollecting." The one time that the court allowed her to exercise the privilege, she had been asked whether, later that night, her husband had said anything to her about the events that had occurred at the mobile home. Even then, however, the court eventually ordered her to answer yes or no to the question. She testified that she did not remember.

■■ Villarreal and Miguel Quintero first argue that the trial court should have granted their motions for mistrial,

because they were not allowed to cross-examine Lila fully. The record shows, however, that they *were* allowed to cross-examine her. In every instance but one, the court ordered her to answer their questions. The one time that the court sustained her assertion of the husband-wife privilege, it still ordered her to give a yes or no answer to the question. Defendants also contend that Lila Quintero's forgetfulness during cross-examination was feigned and deprived them of the right to confront her. The trial court made no finding about whether her lack of memory was real. Even assuming that her claim of memory loss was insincere, we conclude that her inability to remember did not deprive them of their confrontation rights. As stated in *United States v. Owens*,

> "[T]he Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." 484 US 554, 558, 108 S Ct 838, 98 L Ed 2d 951 (1988) (*quoting Delaware v. Fensterer*, 474 US 15, 21, 106 S Ct 292, 88 L Ed 2d 15 (1985) (per curiam)).

We hold that defendants were given a full and fair opportunity for cross-examination. They were free to question and to impeach Lila. Their confrontation rights were not violated, and the trial court did not abuse its discretion in denying Villarreal and Miguel Quintero's motions for mistrial.

■ Defendants also moved to strike Lila Quintero's direct testimony. They argue, relying on *State v. Pew*, 39 Or App 663, 668, 593 P2d 1198 (1979), that her forgetfulness constituted a refusal to testify and that the proper remedy was to strike her direct testimony. The question of whether to strike testimony, however, is within the trial court's discretion. As we held in *Pew*:

> "When a witness refuses to testify on cross-examination, striking of testimony is a proper remedy. Whether the remedy should be employed and how much direct testimony should be stricken depend on the relationship of the question asked and refused to be answered to the issues covered in the

direct examination. The trial court has discretion in making those decisions." 39 Or App at 668.

The trial court's decision not to strike her direct testimony because of her failure to remember those remarks was within its discretion.

 Antonio argues that the trial court erred in ordering his wife to testify about matters concerning him. He contends that the husband-wife privilege, codified in OEC 505(3), was violated and that he was prejudiced by her testimony.[8] OEC 505(3) provides:

> "In *any* criminal proceeding, *neither spouse, during the marriage, shall be examined adversely against the other* as to any other matter occurring during the marriage unless the spouse called as a witness consents to testify." (Emphasis supplied.)

We conclude that the privilege was violated when Lila Quintero was required to testify and that that was prejudicial to Antonio. Invocation of a privilege in front of the jury is recognized as inherently prejudicial. OEC 513 provides, in part:

> "(2) In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury."

The legislative commentary stresses that, not only should the election not be made before the jury, but other situations during the trial should be avoided if they could depreciate the value of the privilege.[9]

---

[8] Antonio does not argue that the questions put to his wife were privileged as confidential communications under OEC 505(2).

[9] The legislative commentary to OEC 513(2) reads, in part:

"The value of privilege may be greatly depreciated by means other than expressly commenting to a jury that it was exercised. Thus, the calling of a witness in the presence of the jury and subsequently excusing [the witness] after a sidebar conference may effectively convey to the jury the fact that a privilege has been claimed, even though the actual claim has not been made in their hearing. Whether a privilege will be claimed is usually ascertainable in advance and the handling of the entire matter outside the presence of the jury is feasible. Destruction of the privilege by innuendo can and should be avoided [Citations omitted.] 6 Wigmore section 1808 at 275-276. This position is in accord with the general agreement of the authorities that an accused cannot be forced to make [the] election not to testify in the presence of the jury. 8 Wigmore section 22678 at 407." *Quoted in* Kirkpatrick, *Evidence* 200 (1982).

The situation here was not unanticipated or unavoidable. Before Lila testified, the court gave a "curative" instruction that the state had requested.[10] Almost immediately after the state began its direct examination, she invoked the privilege in front of the jury, and the state asked the trial court to order her to testify. Throughout all of her testimony, there were repeated objections and motions for mistrials, some in front of the jury. The jury was repeatedly moved in and out of the courtroom, sometimes remaining for only two or three minutes before Lila again invoked the privilege and counsel would have a "matter for the court." At one point, counsel and the court discussed the privilege in the presence of the jury. Counsel's efforts to request a mistrial led the court to announce that there would not be another break. Lila invoked the privilege at least 14 times, in front of the jury. Each time that she invoked the privilege, the jury could have inferred that she was trying to keep damaging testimony about Antonio from them and, that impression was very likely to have intensified each time that she refused to answer.

An appellate court is required to affirm the trial court, notwithstanding evidential error, whenever there is substantial and convincing evidence of guilt in a criminal case and little, if any, likelihood that the error affected the verdict. *State v. Miller*, 300 Or 203, 220-21, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986). We could not conclude that there was little likelihood that what we have described did not affect the verdict against Antonio. All of the defendants were indicted on four counts of attempted aggravated murder, three counts of assault in the first degree and one count of burglary in the first degree. According to the evidence, Antonio personally attacked two victims, and his codefendants attacked the other two. Villarreal was convicted of attempted manslaughter of all four victims, and Miguel was convicted of attempted manslaughter of three of the victims and attempted aggravated murder of one. Antonio, however,

---

[10] The trial court instructed that

"[u]nder the Oregon statutes both she and her husband have a privilege that you can't testify—husband can't testify against wife or wife against husband * * * and so anything she would testify [to] against her husband is not to be considered by the jury and at this juncture I would direct the DA not to ask any questions in regards to Antonio."

was convicted of attempted aggravated murder *of all four victims*. Lila's testimony may have added only little information about the events that were described to the jury by other witnesses, but that and her repeated assertion of the privilege in front of the jury may well have affected the verdict. The trial court erred in denying Antonio's motion for a mistrial.

■■ Antonio and Miguel argue that the court erred in denying their motions for dismissal or for judgment of acquittal. They contend that "attempted aggravated murder" is a nonexistent crime and that, even if it is a crime, the facts here do not constitute that crime. They argue that aggravated murder requires more than one victim in the same criminal episode, ORS 163.095,[11] and that, because there are no murder victims in this case, there could be no aggravated murder. They note that "attempt" is defined as "intentionally engaging in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405. They contend that, because there was no murder victim, "it is a physical, legal and logical impossibility to have the crime of Attempted Aggravated Murder." We disagree. An attempt, by definition, does not require that all elements of the offense be completed. The state presented evidence to show that defendants had intentionally engaged in conduct constituting a substantial step toward the murder of more than one person. That crime is attempted aggravated murder.

■ Miguel argues that the trial court erred in denying his motion for acquittal, because "the state failed to produce any evidence to connect the defendant with any other crime other than hitting Barbosa with a tire iron." The argument ignores the fact that liability for crimes may be imposed under ORS 161.155[12] for aiding or abetting others in their commission. Evidence sufficient to impose accomplice liability was

---

[11] ORS 163.095(d) provides that a murder is aggravated when:

"There was more than one murder victim in the same criminal episode as defined in ORS 131.505."

[12] ORS 161.155 provides, in part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

presented at trial. The trial court did not err in denying the motion.

Both Quinteros argue that it was error for the trial court to decline to reopen the case or order a new trial when new evidence arose which, defendants assert, suggests that Mercedes Quintero and Barbosa may have understated the seriousness of their personal relationship in order to conceal their alleged bias against defendants. We review for abuse of discretion.

■■ Motions for new trial based on newly discovered evidence are not favored. *State v. Clayton*, 11 Or App 534, 538, 504 P2d 139 (1972). A defendant must show that the new evidence (1) would probably change the result of the trial; (2) has been discovered since the trial; and (3) could not have been discovered earlier by the exercise of due diligence. 11 Or App at 538. The claimed new evidence here would not likely have changed the result of the trial. As noted by the trial court, evidence as to Mercedes' and Barbosa's relationship was tangential to whether the altercation took place. The trial court did not abuse its discretion.

■ Defendants argue that the trial court erred by imposing restitution, because it failed to take into account defendants' ability to pay and the rehabilitative effects on defendants as required by ORS 137.106(2).[13] That objection was not raised, however, when the court was discussing the imposition of restitution at the sentencing hearing. Objections were raised about the amount of restitution, but those

---

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime * * *."

[13] ORS 137.106(2) provides, in part:

"In determining whether to order restitution which is complete, partial or nominal, the court shall take into account:

"(a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;

"(b) The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court; and

"(c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment."

objections were resolved. After the court sentenced defendants, it stated that it was "considering restitution in all cases." Although a general objection was made to "the imposing of any restitution in this case," it did not preserve the specific objections defendants now raise. Because the asserted error was not preserved, it is not properly before us to review on appeal. *See State v. Jorgensen*, 8 Or App 1, 13, 492 P2d 312, *rev den* (1972).

■ Villarreal argues that the trial court erred in entering a judgment of conviction against him for burglary in the first degree with a firearm, because in the allegations relating to burglary in the indictment there was no allegation that he used a firearm.[14] He contends that ORS 132.550(4) requires that, in order for a defendant to be convicted of a crime committed with a firearm, the indictment must include that allegation. ORS 132.550(4) provides:

> "The indictment shall contain substantially the following:
>
> "* * * * *
>
> "A separate accusation or count addressed to each offense charged, if there be more than one."

The "offense charged," in this instance, is burglary in the first degree, not burglary in the first degree *with a firearm*. As we have said:

> "When acts alleged in an indictment constitute a crime, even though all the particular acts constituting the elements of the crime are not set forth, the indictment is sufficient if the defendant does not challenge it." *State v. Richardson*, 77 Or App 64, 69, 711 P2d 201 (1985).

Furthermore, the proper time for objection to the indictment was before submission of the case to the jury. An objection would have given the trial court and the state a timely opportunity to review the indictment and to make any necessary corrections before submitting the case to the jury. *See State v. Montez*, 309 Or 564, 597, 789 P2d 1352 (1990).[15]

---

[14] The state argues that this issue was not raised below and should not be considered on appeal. We review it pursuant to ORAP 5.45(2).

[15] Our disposition of this assignment makes a discussion of Villarreal's seventh assignment of error unnecessary.

In view of our conclusion that Antonio's convictions must be reversed, it is unnecessary to address his remaining assignments of error.

In CA A60589, reversed and remanded for a new trial; in CA A60839 and CA A61030, affirmed.