STATE OF OREGON,
*Respondent,*

*v.*

PARIS L. TAYLOR,
*Appellant.*

(C9106-33111; CA A73555)

866 P2d 504

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendant and his father, Osiris, were each indicted for murder, felony murder, robbery in the first degree and felon in possession of a firearm. ORS 163.115; ORS 164.415; ORS 166.270. The charges arose from the homicide of Gonzales in Portland's Old Town. Defendant appeals his convictions after a joint trial with co-defendant Osiris. We affirm the convictions and remand for resentencing.

The homicide occurred in April, 1991. Osiris lived with his girlfriend, Phelps. Phelps testified that, on the same day that Gonzales sold cocaine to Osiris, she became aware from a conversation between Osiris and defendant at her apartment that the cocaine was "bad" or was the wrong form of the drug. Osiris and defendant left the apartment, saying they were going to get their money, and returned an hour or two later. Defendant then left. While watching the television news at 11:00 p.m., Phelps learned that a hispanic male had been shot and that two men had fled in a rust-colored car with California license plates. Phelps became alarmed and asked Osiris if he had done that. He responded that he had. Later, he told her that he had slapped a Mexican, because he wanted his money back.

The homicide took place in full view of several "street people." One eyewitness testified that Osiris and a taller, younger black man had approached Gonzales and demanded drugs, then money. When Gonzales pleaded that he did not want trouble, Osiris had slapped him in the face. The taller man then said, "Fuck this, give me the gun." Osiris passed a handgun to the taller man who put the gun to Gonzales' chest and fired. The men fled and were later seen in a rust-colored compact car. A witness got a partial license plate number. A month later, defendant and Osiris were arrested.

Defendant's first two assignments of error are that the court erred in granting the state's motion to consolidate his trial with that of Osiris and then, at trial, in permitting Phelps to testify as to statements that Osiris had made to her. His argument is that his federal and state constitutional

rights of confrontation[1] were violated, because he could not cross-examine Osiris, who had invoked his right not to testify.

Before trial, the state acknowledged that Osiris' statements to Phelps posed a potential problem under *Bruton v. United States*, 391 US 123, 88 S Ct 1620, 20 L Ed 2d 476 (1968), and *Richardson v. Marsh*, 481 US 200, 107 S Ct 1702, 95 L Ed 2d 176 (1987). In *Bruton*, the Supreme Court held that, in order to protect a jointly tried defendant's right of confrontation, the co-defendant's hearsay confession that facially implicates the defendant could not be admitted. In *Richardson*, the Supreme Court held that the constitutional problem is avoided when the co-defendant's statement is redacted to eliminate not only the defendant's name, but also any reference to his or her existence, and a proper limiting instruction is given. The court here advised defendant that it would redact the statements so that defendant would not be implicated.

 Before Phelps testified, the state presented an offer of proof. After defendant objected to Phelps' testimony that Osiris slapped but did not shoot Gonzales, the prosecutor agreed to eliminate the shooting reference. After redaction, Phelps testified:

"[PROSECUTOR]: Did you see anything on the news that made you become alarmed?

"[PHELPS]: Yes.

"[PROSECUTOR]: And would you tell the jury what it was you saw that caused you to become alarmed?

"[PHELPS]: That a Hispanic male had been shot and two men fled in a car with California license plates.

"\* \* \* \* \*

"[PROSECUTOR]: Tell the jury why you became alarmed.

"[PHELPS]: Because I have a car with California license plates.

"[PROSECUTOR]: And did you turn and confront Solomon Osiris about what you heard on the news?

---

[1] Defendant does not contend that his state constitutional right is greater than his federal right. He argues that his right to confrontation would be violated under the state constitution for the same reason his federal right is violated.

"[PHELPS]: Yes, I did.

"[PROSECUTOR]: What did you say to him?

"[PHELPS]: Did he do that.

"[PROSECUTOR]: And what did he say?

"[PHELPS]: He hesitated and he nodded yes.

"* * * * *

"[PROSECUTOR]: Now, Ms. Phelps, did you later talk to Solomon Osiris about what he did to the person who got killed?

"[PHELPS]: Yes.

"[PROSECUTOR]: Did you ever find out the race of the person who had been killed from Solomon Osiris?

"[PHELPS]: Yes.

"[PROSECUTOR]: And what was the race, what did he tell you the race of the person who had been killed was?

"[PHELPS]: Mexican.

"[PROSECUTOR]: And what did he tell you he did to the Mexican who'd been killed?

"[PHELPS]: Slapped him.

"[PROSECUTOR]: Slapped him?

"[PHELPS]: Yes.

"[PROSECUTOR]: Did he tell you why he slapped him?

"[PHELPS]: Just wanted his money."

Under ORS 136.060(1),

"[j]ointly charged defendants shall be tried jointly unless the court concludes before trial that it is clearly inappropriate to do so and orders that a defendant be tried separately. In reaching its conclusion the court shall strongly consider the victim's interest in a joint trial."

Our review is to determine whether the court's joinder of the trials was clearly inappropriate. *State v. Quintero*, 110 Or App 247, 252, 823 P2d 981 (1991), *rev den* 314 Or 392 (1992). The trial court here did not err in granting the state's motion for joinder or in permitting the redacted testimony. Phelps' testimony as to what Osiris told her did not refer directly or indirectly to defendant. When Phelps asked Osiris what he had done, his response was that *he* had slapped Gonzales.

Defendant argues, however, that we should follow case law that holds that redacted statements do not avoid constitutional problems when those statements, along with other trial evidence, inevitably identify the defendant as the other person to whom the co-defendant is referring. *See People v. Banks,* 438 Mich 408, 475 NW2d 769 (1991), *cert den* ___ US ___, 112 S Ct 955 (1992). Defendant argues that that is the result of the redacted statements here, because Phelps' statements indicated the existence of another person. He contends that the jury could infer from Osiris' statement that, if Osiris slapped Gonzales, then defendant shot him. However, that inference was not created by Osiris' statement. An eyewitness testified that Gonzales fought with two men, one of whom slapped him and one of whom shot him. Eyewitnesses identified Osiris as one of the men. It was defendant's presence with Osiris, before and after the crime, that established his identity.

■ Defendant next assigns error to the denial of his motion for a mistrial after Osiris disrupted the court proceedings. After some 13 witnesses had testified for the state, Osiris interrupted the examination of a detective. He jumped up, scattering items across the courtroom, and yelled:

> "I cannot get a fair trial under the circumstances. She's leading the witnesses on. Not only that, she's paying them off. These are paid witnesses, poor people who she just twisted around. She's got my lawyer twisted around her finger, and you seem to be helpless to do anything about it.

> "This is a violation of my constitutional rights. There's no way to get a fair trial under the circumstances. Everything she is saying, he goes right along with, nothing we can do about it, nothing we can do about it. That's BS. It's BS, man.

> "I told you I don't want you on the case in the first place, and now I really want you off my case.

> "THE COURT: Mr. Osiris, have a seat. Be seated right now.

> "THE DEFENDANT OSIRIS: I want you off my case.

> "THE COURT: Take the jury out."

While the jury was out of the room, Osiris continued his tirade and hit his attorney in the face. Defendant sat quietly during the outburst and said nothing.

Defendant argues that, because he is Osiris' son, the negative reaction the jury would have had to Osiris' conduct and subsequent exclusion from the courtroom would "undoubtedly" extend to defendant and interfere with his right to receive a fair trial from an impartial jury.

■ A motion for a mistrial is addressed to the discretion of the trial court, and an appellate court will not reverse the decision in the absence of an abuse of that discretion. *State v. Montez*, 309 Or 564, 595, 789 P2d 1352 (1990). There was no abuse of discretion here. The jury saw only a small portion of Osiris' tirade. The court gave two cautionary instructions, pointing out that defendant had not participated in the outburst and admonishing the jury not to attribute the conduct of Osiris to defendant. The father-son relationship here does not compel the conclusion that the jury would perceive defendant to be the same "type" as his father, particularly in the light of the fact that defendant sat quietly during Osiris' outburst.

■ Defendant also assigns error to the trial court's sentence of life in prison with a 20-year minimum term under ORS 163.115(3). The state concedes that the life term is invalid. The minimum term is valid, but the life term of imprisonment must be remanded for resentencing. *State v. Morgan*, 316 Or 553, 856 P2d 612 (1993).

Convictions affirmed; remanded for resentencing.