GARRETT, J.
*478 In two criminal cases, defendant was convicted of multiple sex offenses committed against his 15-year-old ward, J.[1] In a consolidated appeal from the resulting judgments, defendant assigns error to the trial court's denial of his motion to exclude out-of-court statements made by his wife, Glenda Hudspeth, to police officers, a grand jury, and a social-service provider. In those statements, Glenda said that defendant had admitted to sexually abusing J. Defendant argues that the trial court's admission of the statements violated the Confrontation Clause of the Sixth Amendment to the United States Constitution because, at the time of trial, his wife claimed that she did not remember making the statements at issue.[2] Defendant argues that, in light of wife's claimed lack of memory, he was deprived of the right to cross-examine her, and, therefore, her out-of-court statements were inadmissible.
"Because the trial resulted in convictions on all counts, we state the background facts in the light most favorable to the state." State v. Nelson , 246 Or. App. 91, 93, 265 P.3d 8 (2011) (citing State v. Haugen , 349 Or. 174, 176, 243 P.3d 31 (2010) ). "We review a constitutional confrontation challenge to the admission of evidence for errors of law." State v. Townsend , 290 Or. App. 919, 922, 417 P.3d 571 (2018).
J and E lived with defendant and his wife, Glenda; J was the Hudspeths' ward, and E was their foster child. J was developmentally delayed. At the time of the offenses-alleged to have occurred between September 1, 2010 and December 30, 2013-J was from 12 to 15 years old.
On the night of December 30, 2013, after both E and J went to bed, E heard noises coming from J's room.
*479 E went to J's room and turned on the light. She saw defendant engaged in oral sexual contact with J. Defendant said he was "just comforting" J and left the room. E asked J "how long * * * this was going on and why she didn't ask for help." J told E that it had started "right after she'd gotten adopted [sic ]" and that she "had tried asking for help but nobody wanted to listen to her."
The following day, E told Glenda what had happened the night before. Glenda asked J if E's account was true. J said "yes" and told Glenda that defendant had "been doing it for quite a while." E saw Glenda leave the house and speak to defendant, who was working outside. According to E, Glenda looked "pretty upset." Glenda and defendant returned to the house, and with Glenda, J, and E present, defendant stated "I'm so sorry" and that he planned to leave the house that day and turn himself in to the police.
Several hours later, after defendant had packed his truck and left, Glenda took J and E to an office of the Department of Human *770 Services (DHS), where Deputy Nisbet conducted a recorded interview with Glenda. In that interview, she stated that, when she had approached defendant outside after E and J told her what happened, defendant had admitted to having sexual contact with J about once a month for the preceding two to two-and-one-half years. Glenda repeated defendant's admission in a separate interview with Siegner, the director of the organization that assisted DHS in certifying the Hudspeths' foster home. The next day, Glenda told Sheriff Glerup that defendant had admitted to abusing J and had stated that he planned to turn himself in. Glenda subsequently appeared before a grand jury and testified under oath that, when she confronted defendant, he "told her that whatever the girls [had] said was true."
In separate cases, defendant was indicted on two counts of first-degree rape, ORS 163.375 (one based on "forcible compulsion" and one based on J's inability to consent "by reason of mental defect"); one count of third-degree rape based on the fact that J was under 16 years of age; two counts of first-degree sodomy, ORS 163.405 (one based on "forcible compulsion" and one based on J's inability to consent "by reason of mental defect"); two counts of first-degree *480 sexual abuse, ORS 163.427 (one based on "forcible compulsion" and one based on J's inability to consent "by reason of being mentally defective"); two counts of second-degree sexual abuse, ORS 163.425 ; and one count of third-degree sodomy, ORS 163.385.
The two cases were consolidated for trial. Defendant filed a motion in limine to "prohibit" Glenda "from testifying," or, in the alternative, to prohibit the state from impeaching Glenda with her prior, out-of-court statements. Defendant asserted that Glenda had "no memory of the allegations made by [E] or [J] on the morning of December 31, 2013," "no memory of things [defendant] told her * * * after she confronted him with these allegations of sexual impropriety," and "no memory" of her statements to Nisbet. Based on Glenda's purported memory loss, defendant argued that she was not a competent witness and could not provide reliable testimony.
The prosecution responded that Glenda was feigning memory loss and qualified as a competent witness regardless of whether she professed to remember her previous statements. On the same day, the prosecution provided the required notice of its intention to offer evidence of Glenda's statements to Nisbet and the grand jury under OEC 803(28), the residual hearsay exception. Defendant responded that admission of Glenda's out-of-court statements would violate the Confrontation Clause because, due to Glenda's memory loss, defendant "would obviously not be able to cross-examine [Glenda] regarding the truth of any of the statements."
At a pretrial hearing, Glenda testified about her memory of December 31, 2013-the day that E and J informed Glenda of defendant's abuse of J. Glenda testified that she had some memory of that day, but she did not remember E and J speaking with her, and she did not remember speaking to Siegner or Nisbet. Glenda stated that, with respect to anything that she had said on December 31, she "couldn't tell you if it was true or false." Defendant called a neuropsychologist to testify about Glenda's purported memory loss, and he opined that neuropsychological testing and Glenda's medical and mental health history (including her *481 chemotherapy treatment) was "consistent with her inability to clearly recall her conversations with her spouse" on December 31.
The trial ruled that Glenda was an "unavailable" declarant for purposes of the evidentiary rules applicable to hearsay. See OEC 804(1) (" 'Unavailability as a witness' includes situations in which the declarant: * * * (c) Testifies to a lack of memory of the subject matter of a statement[.]").[3] The court *771 further ruled that Glenda's statements to Nisbet, Siegner, Glerup, and the grand jury were admissible under various hearsay exceptions in OEC 803 and 804. The court then concluded that admission of the statements did not violate the Confrontation Clause because defendant would "have an adequate opportunity to cross-examine [her]." The court reasoned that "it would be a bizarre result the other way in my mind * * * that those who have made statements simply have to claim and testify under oath that they can't remember and, somehow, anything that they'd said before would never come into court." Accordingly, the court deemed admissible Glenda's out-of-court statements describing defendant's admissions.
At trial, Glenda provided lengthy testimony describing some past events in detail. She testified that she could not remember anything about December 31, 2013. During cross-examination, counsel for defendant asked Glenda about her medical history, among other topics, and Glenda testified that she had been "on chemotherapy for almost two years before these charges arose." Defense counsel asked Glenda one question about the initial disclosures of defendant's abuse by E and J:
"Q: Now, when-you don't remember, it sounds like, what happened when you were told about these charges, when the girls came down and talked to you; is that right?
*482 "A: I don't remember anything."
Defense counsel referred to defendant's admission that he had abused J only in the following exchange:
"Q: And, again, your husband had been charged with very serious crimes, and at some point, you must have been told that you gave information that was damaging; right?
"A: Yes.
"Q: You refused to look at that information when it came to your house, but you knew that you'd given information that was damaging to your husband?
"A: Yes."
At the end of trial, the jury found defendant guilty of all counts.[4]
On appeal, defendant renews his argument that the admission of Glenda's out-of-court statements violated his rights under the Confrontation Clause. Defendant argues that, in light of Glenda's trial testimony that she could not recall making those statements or whether the statements were true, "it was impossible for defendant to assess the reliability of the out-of-court statements through cross-examination."
The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." U.S. Const., Amend VI. "Subject to limited exceptions, the federal Confrontation Clause prohibits the admission of testimonial evidence for the truth of the matter asserted unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness."[5] State v. Rafeh , 361 Or. 423, 431, 393 P.3d 1155 (2017). However, "[t]he Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." United States v. Owens, 484 U.S. 554, 558, 108 S.Ct. 838, 98 L. Ed. 2d 951 (1988) (internal quotation marks omitted). "To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." Id. (internal quotation marks omitted).
In Owens , the U.S. Supreme Court addressed the impact of a witness's memory loss on a defendant's confrontation rights. In that case, a prison counselor was attacked and severely beaten, resulting in severe memory impairment. Id. at 556, 108 S.Ct. 838. Several weeks after the attack, the counselor identified the defendant as his attacker *772 when speaking to an FBI agent. Id. At trial, the counselor testified that he remembered identifying the defendant as his attacker to the agent, but, at the time of his testimony, he could not remember seeing his assailant during the attack. Id. The Court held that admission of the counselor's statements did not violate the defendant's confrontation rights despite the witness's memory loss, stating that "[t]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " Id. at 559, 108 S.Ct. 838 (quoting Kentucky v. Stincer , 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L. Ed. 2d 631 (1987) (emphasis in Stincer ) ). The court held that such an opportunity is not denied when "the witness' past belief is introduced and he is unable to recollect the reason for that past belief," and it is "sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination), the very fact that he has a bad memory." Id. (citation omitted). The court reasoned that any inquiry into the reliability of the hearsay statements was unnecessary "when a hearsay declarant is present at trial and subject to unrestricted cross-examination" because "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." Id. at 560, 108 S.Ct. 838.
Defendant argues that Owens was implicitly over-ruled by Crawford v. Washington , 541 U.S. 36, 124 S.Ct. 1354, 158 L. Ed. 2d 177 (2004), in which the Supreme Court explained in a footnote that the Confrontation Clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." Id. at 59 n. 9, 124 S.Ct. 1354. Defendant's argument largely rests on the assertion that a declarant who cannot remember making a statement is unable to "defend or explain it." We reject defendant's reading of Crawford , which did not purport to disturb the Owens rule, and involved a witness who was entirely unavailable due to the assertion of marital privilege under state law. Rather, the Court in Crawford held that a court's determination of the trustworthiness of a testimonial statement could not substitute for a defendant's opportunity to cross-examine the declarant. See id. at 61, 124 S.Ct. 1354 ("Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less amorphous notions of 'reliability.' "). The court made clear that the right to confrontation is a procedural right, rather than a substantive one, "command[ing], not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." Id. In the footnote cited by defendant, the court also explained:
"[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . It is therefore irrelevant that the reliability of some out-of-court statements cannot be replicated, even if the declarant testifies to the same matters in court. The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."
541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (emphasis added; citations and internal quotation marks omitted).
Thus, in context, we understand Crawford to mean that substantive reliability is not the test for the adequacy of confrontation, and thus, a declarant's willingness or ability to "defend or explain" the substance of her out-of-court statements is not dispositive, so long as she is available for cross-examination, and her testimony is not constrained by the invocation of a privilege not to testify, as was the case in Crawford . It is thus consistent with Owens , which *485 characterized the right to confront a witness as a procedural right rather than a substantive one insofar as it held that a court is not required to assess the substantive reliability of hearsay statements when the declarant "is present at trial and subject to unrestricted cross-examination." 484 U.S. at 560, 108 S.Ct. 838. Moreover, Crawford did not address the constitutional sufficiency of any particular instance of cross-examination, *773 and, therefore, it does not undermine the rule in Owens that a defendant is entitled to an opportunity to cross-examine a hearsay declarant, but not to cross-examination that is effective or free from memory lapses.
In our recent decision in Townsend , we affirmed the rule of Owens , holding that, as a general matter, so long as the defendant is given the full and fair opportunity for cross-examination, a witness's lack of memory of the statements or of the veracity of the statements does not give rise to a Confrontation Clause violation. 290 Or. App. at 923-24, 417 P.3d 571. In that case, police officers arrested the defendant during a traffic stop in 2005, and upon booking him at the police station, they found narcotics in his possession. Id. at 921, 417 P.3d 571. The defendant was charged with misdemeanor possession of narcotics, and he then absconded for 11 years. Id. By the time of the defendant's 2016 trial, the arresting officers "had little to no independent recollection of the interactions at the police station resulting in the discovery of the controlled substance," but they had made written recordings of their knowledge at the time. Id. at 921-22, 417 P.3d 571. The trial court admitted those writings over the defendant's Sixth Amendment Confrontation Clause objection.
We concluded that, because the officers were "subject to cross-examination," the defendant's confrontation rights were satisfied, affirming the principle that the Confrontation Clause " 'guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " Id. at 923, 417 P.3d 571 (quoting Stincer , 482 U.S. at 739, 107 S.Ct. 2658 (emphasis in Stincer omitted) ). Citing a case that relied upon Owens , we observed that the "right to confrontation is 'satisfied when the defense is given a full and fair opportunity to probe and expose [the] infirmities [in the witness's testimony] through cross-examination.' " Id. at 922, 417 P.3d 571 (alterations in Townsend ;
*486 quoting State v. Quintero , 110 Or. App. 247, 254, 823 P.2d 981 (1991), rev. den. , 314 Or. 392, 840 P.2d 710 (1992) (quoting Owens , 484 U.S. at 558, 108 S.Ct. 838 ) ). We reasoned that a "full and fair opportunity exists when cross-examination can test the witness's sincerity, memory, ability to perceive and relate, and the factual basis for [the witness's] statements." Id. at 923, 417 P.3d 571 (alterations in Townsend ; internal quotation marks omitted). We further observed that Crawford "seem[ed] to foreclose defendant's argument" in the passage quoted above, in which the Court stated that "the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." 541 U.S. at 59 n. 9, 124 S.Ct. 1354 (internal quotation marks and citations omitted). Thus, in Townsend , we understood that passage to mean that a declarant's presence and availability for cross-examination at trial is sufficient under Crawford to satisfy a defendant's Sixth Amendment confrontation rights, regardless of whether the witness remembers the statement or the underlying events. See also State v. Pollock , 251 Or. App. 755, 759, 284 P.3d 1222 (2012), rev. den. , 353 Or. 280, 298 P.3d 30, cert. den. , 571 U.S. 851, 134 S.Ct. 123, 187 L.Ed.2d 87 (2013) ("The choice whether and to what extent to cross-examine a witness always requires a weighing of benefits and risks. But where, as here, the victim has taken the witness stand and is available for cross-examination, the Confrontation Clause is not implicated.").
Accordingly, based on Owens and Townsend , we reject defendant's confrontation argument. Because Glenda was available at trial and subject to unconstrained cross-examination by defendant, his procedural confrontation rights were satisfied. Glenda swore an oath to tell the truth under penalty of perjury and was deemed competent to testify, and at no point did she expressly refuse to respond to a question. She was able to speak, listen, and understand the questions asked of her, and she testified about a number of past events, including events that occurred on the same day as some of the hearsay statements at issue. Cf. State v. Sullivan , 217 Or. App. 208, 213, 174 P.3d 1095 (2007), rev. den. , 344 Or. 539, 186 P.3d 286 (2008) (holding that, despite the fact that the witness "chose to respond selectively to the questions," the defendant was given a "full and fair opportunity to cross-examine [the witness] about her testimony and about her lack of memory about certain specifics and then to argue that, *487 because of the nature of her answers, scant weight should be given *774 to the testimony" (internal quotation marks omitted) ). Like the police officers in Townsend , she claimed to have no independent recollection of the events underlying her hearsay statements and, therefore, would not independently confirm that her previous statements were accurate. Yet, her claimed memory loss did not prevent defendant from testing her credibility. Cf. Quintero , 110 Or. App. at 254, 823 P.2d 981 (holding that the defendants had a "full and fair opportunity for cross-examination" of the witness, even "assuming that her claim of memory loss was insincere," because they were "free to question and to impeach [the witness]"). Moreover, defendant did attempt to undermine the credibility of Glenda's out-of-court statements by arguing that her chemotherapy treatment had caused her to experience cognitive difficulties and memory loss before December 31, and he elicited testimony from Glenda about those difficulties. The jury was able to observe that line of questioning and Glenda's response to it. That defendant chose not to directly ask Glenda about the veracity of her hearsay statements does not mean that he was deprived of the opportunity to do so.[6] Cf. Pollock , 251 Or. App. at 759, 284 P.3d 1222 (concluding that the state's tactical decision not to question the victim in detail-thereby placing the burden on defendant "to weigh the advantages and disadvantages of cross-examining the victim specifically about her statements-"did not limit defendant's right to confrontation" under the Sixth Amendment). Thus, we conclude that defendant had an adequate opportunity to cross-examine Glenda about her statements at trial and, therefore, that the trial court did not err in admitting those statements.
Affirmed.

In one case, defendant was convicted of two counts of first-degree rape, ORS 163.375, and one count of third-degree rape, ORS 163.355. In the other, defendant was convicted of two counts of first-degree sodomy, ORS 163.405, and one count of third-degree sodomy, ORS 163.385.

The Confrontation Clause of the Sixth Amendment applies to the states via the Fourteenth Amendment. Pointer v. Texas , 380 U.S. 400, 403-06, 85 S.Ct. 1065, 13 L. Ed. 2d 923 (1965). In this appeal, defendant does not raise a confrontation challenge under Article I, section 11, of the Oregon Constitution, which provides, in relevant part, that "the accused shall have the right * * * to meet the witnesses face to face * * * in all criminal prosecutions."

In cases addressing a criminal defendant's confrontation rights under Article I, section 11, of the Oregon Constitution, we have also used the term "unavailable" to refer to a defendant's inability to cross-examine a witness, which is distinct from the question of whether a witness is "unavailable" under OEC 804(1). See, e.g., State v. Sullivan, 217 Or. App. 208, 213, 174 P.3d 1095 (2007), rev. den., 344 Or. 539, 186 P.3d 286 (2008) ("Under Article I, section 11, of the Oregon Constitution, a determination that a witness is 'unavailable' is not applicable in instances where the declarant is available to testify and be cross-examined." (Internal quotation marks omitted.) ).

Four of the guilty verdicts merged with verdicts on other counts.

The state agrees with defendant that Glenda's statements to Nisbet, Siegner, and the grand jury are "testimonial." The state does not argue that Glenda's statements to Glerup are not testimonial, and we assume, without deciding, that those statements are testimonial as well.

Moreover, as a Colorado court aptly observed:
"[A] rule that a witness is unavailable for Confrontation Clause purposes based entirely upon the witness's testimony that she suffers from memory loss is unworkable. Memory loss may be real or feigned. It may be total or partial. Sometimes lost memory may be refreshed in whole or in part. To permit a witness to unilaterally control the admission into evidence of the witness's prior relevant statements merely by professing a lack of memory is intolerable to the criminal justice system."
People v. Leverton , 405 P.3d 402, 411 (Colo. App. 2017).