Argued November 21, 1978, affirmed
April 23, 1979

STATE OF OREGON, *Respondent,*

*v.*

DANIEL W. PEW, *Appellant.*

(No. DA 147372 No. DA 147373, CA 11797)

(cases consolidated)

593 P2d 1198

Jenny M. Cooke, Certified Law Student, Portland, argued the cause for appellant. With her on the brief was Julie E. Frantz, Portland.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

LEE, J.

**LEE, J.**

Defendant appeals a conviction for resisting arrest. ORS 162.315. He contends that the trial court erred in: (1) "ruling that self-defense cannot be raised as a defense to resisting arrest"; (2) granting the state's motion to quash defendant's subpoena *duces tecum* directed to the custodian of certain police internal affairs records; and (3) granting the state's motion to strike the direct testimony of a witness who asserted his Fifth Amendment privilege on cross-examination.

Officer Mooney, patrolling alone, observed several people standing around defendant's parked automobile. He approached the car and smelled burning marijuana. He asked the people in the car to get out. When he began to search the car, defendant became upset. At that point, Officer Shire arrived and took defendant aside momentarily. As they returned toward the car, defendant saw that Mooney was about to open the driver's-side door. He cautioned Mooney not to open the door very wide because it would jam the fender. When Mooney opened the door, a "bang" was heard and defendant became angry. He started toward the car and flicked his cigarette toward Shire. After brushing the embers off his shirt, Shire grabbed defendant's arm and said, "You're under arrest." According to Shire, defendant jerked away. Shire grabbed him again, and again he broke loose. Shire then wrapped both arms around defendant's chest and tried to pull him to the patrol car. He told defendant to stop fighting and, again, that he was under arrest. Shire then applied a "sleeper hold" (one designed to produce temporary unconsciousness), and defendant relaxed somewhat. When he was released, however, he resumed struggling. Shire was not able to reapply the "sleeper hold." With the help of Mooney and another officer who had arrived in the meantime, defendant was finally subdued.

Other witnesses offered a different account of the incident. They testified, as did defendant, that he did

not resist. They claimed that Mooney kneed defendant in the midsection and twice slammed his head on the pavement. (Defendant did not recall the latter action.) Mooney denied that he intentionally kneed defendant or slammed his head on the pavement.

Defendant was charged with harassment, resisting arrest and possession of less than an ounce of marijuana. The possession charge was dismissed after the court suppressed the marijuana. Defendant was acquitted on the harassment charge.

■ Defendant's argument that the trial court erred in "ruling that self-defense cannot be raised as a defense to resisting arrest" presents no reviewable issue. Defense counsel argued to the court at the close of the case that the evidence established that defendant reasonably believed *deadly* force was being illegally used against him and that any physical resistance he may have offered was therefore justifiable.[1] However, no motion was made requiring a legal ruling on that point, and the court stated no legal conclusion on it. Defendant does not argue that the court was required to do so. The court could have found that defendant had no reasonable belief that deadly force was being used. Because there was no legal ruling on the point defendant seeks to raise, no legal issue is presented for review. *See American Sanitary Service v. Walker,* 276 Or 389, 395, 554 P2d 1010 (1976).

■ Defendant's subpoena *duces tecum* directed the custodian of police records to bring with him to court Mooney's police internal affairs records. Defendant contended that the records would show several prior

---

[1] ORS 161.260 provides:

"A person may not use physical force to resist an arrest by a peace officer who is known or reasonably appears to be a peace officer, whether the arrest is lawful or unlawful."

Defendant argues that that provision should not be read to include instances in which the defendant reasonably believes deadly physical force is being used. *See State v. Miller,* 35 Or App 207, 216 n 3, 582 P2d 1378, *withdrawn on other grounds,* 36 Or App 859, 585 P2d 772 (1978). We are not required to rule on that issue.

citizen complaints against Mooney for excessive use of force and would possibly show that Mooney had been disciplined for the use of such force. The records custodian responded to the subpoena with a motion to quash, and defendant moved to compel discovery. The trial court ordered an *in camera* inspection. After reviewing the records, he ordered the subpoena *duces tecum* quashed.

Defendant argues that he was entitled to the outright production of the records under *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), because the evidence was material to his guilt and was favorable to him. He does not claim that the records were admissible as substantive evidence; he claims only that they might have proven useful in impeaching Mooney's testimony. In particular, he argues that the records would show that Mooney, not defendant, was the aggressor in the incident at issue and would "establish [his] strong bias, his motive to falsify testimony, due to his vulnerable position vis-a-vis the Internal Affairs Division."

We find that the records would not have been admissible for either of the claimed purposes. ORS 45.600 provides that a witness

"* * * may not be impeached by evidence of particular wrongful acts, except that it may be shown by his examination or by the record of the judgment, that he has been convicted of a crime."

The substance of the prior complaints, which were unrelated to this incident, could not therefore be admitted to impeach Mooney.[2] *See Davis v. Dean,* 221 Or 110, 114, 350 P2d 910 (1960).

■ Furthermore, having reviewed the reports, we do not accept that they would tend to establish any "vulnerable position vis-a-vis the Internal Affairs Division" or other particular motive to testify falsely

---

[2] Defendant was permitted to offer evidence of Mooney's purported reputation for using excessive force.

concerning the force used by any officer or the resistance offered by defendant. In no instance in which an investigation was completed were the charges determined to be well-founded. There was no indication that Mooney had been disciplined or that he might be more severely disciplined in this instance because of the past charges. Defendant *was* permitted to show that Mooney was aware of police department procedures for dealing with complaints against officers for using excessive force. He also showed that Mooney knew defendant had filed such a complaint against him after the incident involved here.[3]

We hold that the trial court did not err in quashing the subpoena *duces tecum.* Investigation had been temporarily suspended with respect to one other complaint. We cannot conclude that the mere existence of another unrelated and unresolved complaint would have demonstrated a motive for Mooney to lie in this case.

Defendant's third point is that the court erred in striking the direct testimony of a witness called by defendant when the witness invoked his Fifth Amendment privilege in refusing to answer a question on cross-examination. The witness invoked the privilege when asked if he had said anything to Mooney while he conducted the search of defendant's car. The prosecutor was attempting to prove hostile statements made by the witness to the officer in order to establish the witness's bias or prejudice.

Fairness and reliability in the ascertainment of guilt or innocence require that the state be allowed to impeach the credibility of defense witnesses. When a witness refuses to testify on cross-examination, striking of direct testimony is a proper remedy. Whether that remedy should be employed and how much direct

---

[3] An internal affairs file had been set up in regard to that complaint, but no investigation had been commenced nor any other action taken. The file contained the ordinary police reports concerning defendant's arrest.

testimony should be stricken depend on the relationship of the question asked and refused to be answered to the issues covered in the direct examination. The trial court has discretion in making those decisions. If the witness refuses to answer questions concerning matters directly at issue, his direct testimony (or at least the portion bearing on those issues) should generally be stricken. On the other hand, if the refusal is limited to collateral matters, *i.e.,* matters on which the cross-examining party would not be allowed to introduce independent evidence, the court may choose not to strike. *See generally,* 5 Wigmore, Evidence § 1391 (Chadbourne rev 1974). Where, as here the question relates to bias or prejudice (matters which are not considered collateral, McCormick, Evidence § 47, p 102 (Cleary ed 1972), it is within the court's discretion to strike the entire direct testimony of the witness. That is what the court did. The question being germane and connected with the testimony in chief *(State v. Spunaugle,* 11 Or App 583, 587, 504 P2d 756 (1972); *see also State v. Johnson,* 243 Or 532, 539, 413 P2d 383 (1966)), we find no error.

Affirmed.