Argued and submitted October 31, 1996, affirmed February 19, petition for review denied June 17, 1997 (325 Or 438)

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL ALAN LEA,
*Appellant.*

(C8803-32590 and C9409-35604;
CA A90541 (Control) and CA A90723)

934 P2d 460

Steven V. Humber, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant, in consolidated appeals, seeks reversal of convictions for rape in the first degree and sodomy in the first degree, ORS 163.375; ORS 163.405, and also seeks reversal of a consequent revocation of probation on a separate matter. He argues, *inter alia*, that the trial court erred in striking his testimony in a suppression hearing after he invoked the right against self-incrimination during the state's cross-examination. We conclude that the trial court did not err and affirm.

On August 24, 1994, Oregon State Police Detective Vicki Roberts and Portland Police Bureau Detective Mike Barnes went to defendant's residence, Madison House, a group home, to investigate an incident of sexual abuse involving a four-year-old girl. The manager of the home led the detectives downstairs to her office in the basement and brought defendant down to speak with them. The office was small and crowded.

The detectives, who were armed but dressed in plain clothes, introduced themselves as police officers. They told defendant that they were investigating a case involving sexual abuse of a child. They also told him that he need not speak with them and that he was free to go if he wanted. The detectives promised defendant that they would not arrest him that day, regardless of what the investigation disclosed.

The detectives interviewed defendant for about three hours, beginning at approximately 5:25 in the afternoon. Defendant, who appeared to be nervous at the beginning of the interview, gradually appeared to be more and more relaxed. Although he initially denied having any involvement in the incident, defendant admitted more and more involvement as the interview proceeded. Eventually, defendant confessed to actively participating, with another man, in the sexual abuse. After that confession, detective Roberts wrote out a description of the events as defendant had recounted them. Defendant read, corrected in part, and signed that statement.

Defendant has been diagnosed as having schizophrenia, a life-long psychiatric disorder, with paranoid features. Defendant's condition is intermittently symptomatic.

At the time of the interview with the detectives, defendant was not overtly symptomatic and was not taking any medication relating to his schizophrenia.

On December 6, 1994, defendant was indicted on four counts of rape in the first degree, twelve counts of sodomy in the first degree, and four counts of using a child in the display of sexually explicit conduct. All charges related to the alleged incident involving the four-year-old girl.

Defendant moved to suppress inculpatory statements, including his confession, made during the interview. Defendant asserted, *inter alia*, that those statements were involuntary:

> "The defendant in this case contends that the evidence will show that any statement made or allegedly made by him was the product of official psychological pressure, trickery or false and misleading promises. Additionally or in the alternative, the defendant asserts that his mental state was such at the time of any such statement(s) that he could not 'knowingly, intelligently and voluntarily' waive any of his rights."[1]

The state responded that defendant's inculpatory statements were voluntary in that they were not the product of impermissible coercion or inducement.

The trial court held an omnibus evidentiary hearing on the motion to suppress. ORS 135.037(1), (2). That hearing, and particularly the trial court's decision to strike all of defendant's testimony on direct examination during that hearing, is the focus of this appeal. At the hearing, after detectives Roberts and Barnes testified, the defense presented the testimony of Dr. Jerry Larson, a psychiatrist who had evaluated defendant. Larson diagnosed defendant as a person with chronic schizophrenic illness and testified that some persons with that illness can, when symptomatic, "shut down" and become incapable of exercising free choice when faced with authority. On cross-examination, Larson acknowledged that he could not "say that [defendant] wasn't capable

---

[1] Defendant also asserted that he was not properly apprised of his right to counsel during custodial interrogation. The trial court ultimately rejected that argument, and defendant does not dispute that determination on appeal.

of making a voluntary statement" at the time of the interview.

Defendant then testified. On direct examination, he related descriptions and observations about characteristics of the room in which the interview took place, the detectives' demeanor and tone of voice, and statements and suggestions the detectives made to him. Defendant also testified regarding his subjective "state of mind" during that interview:

"Q. Did you feel that you could get up and leave?

"A. No.

"Q. How did you feel?

"A. I felt like I was trapped.

"Q. Why did you feel trapped?

"A. Because they were on either side of me and I would have to go by one of them to get through.

"Q. And did you believe you had any choice in talking to them?

"A. Not really, no."

After a few preliminary questions on cross-examination, the following colloquy occurred:

"Q. [By the prosecutor] And then you started to talk to [the detectives] and you were nervous; right?

"A. [By defendant] Yeah.

"Q. And it's a fact that you were nervous because you weren't being truthful at the beginning; right?"

At that point, defense counsel objected, asserting that the cross-examination exceeded the scope of the direct examination, in that the former went to "the substance of [defendant's] statements," while the latter pertained only to "whether or not the statements were voluntary and whether [defendant] perceived that he could leave or not." The court overruled the "outside the scope" objection, and the cross-examination continued:

"Q. [By the prosecutor] And then you started to relax as you talked to the detectives more; right?

"A. [By defendant] I started feeling like I was—I mean, giving up, more than relax.

"* * * * *

"Q. All right. So, you're saying you weren't relaxed?

"A. Right.

"Q. All right. But it's true, isn't it, you started out telling them something that was false and you denied going into the house on the day that you were there with Mr. Neff; right?

"[DEFENSE COUNSEL]: For the record, I would object to this, which is we are not getting into the substance of the statements. By taking the stand, [defendant] doesn't waive his right against self-incrimination under *U.S. v. Simmons*."

The court overruled the objection and stated, "If you wish to talk with your client about his asserting his right against self-incrimination, you may have an opportunity to do that." Again, cross-examination resumed:

"Q. [By the prosecutor] [Defendant], I'll ask you that question again, one more time. The nervousness you were feeling at the beginning was, at least in part, due to the fact that what you were telling the detectives about not being inside the house, where you said you stayed out in the car, that was a lie; right?

"A. I don't know. I don't know what to say.

"Q. Well, just answer the question.

"A. I mean, it would incriminate myself.

"Q. Okay.

"THE COURT: I'm going to interpret that response as an exercise of the defendant's right against self-incrimination. He needs not be required to answer that question."

The state then moved to strike all of defendant's direct testimony, arguing that, because of defendant's exercise of the right against self-incrimination, it had been denied the opportunity to conduct meaningful cross-examination. The court observed:

"When the defendant testified that he felt trapped, that he did not feel free to leave, he put in issue his mental state at the time of the interview by the police. That entire mental state is now subject to cross-examination. If the defendant wishes to exercise his right against self-incrimination in response to a question about his mental state and what motivated his mental state, which was exactly the character of [the prosecutor's] question, then the direct testimony will be stricken.

"* * * * *

"Your client is asserting his right against self-incrimination. * * * I respect that. But he can't have it both ways. He can't tell me on direct that he felt trapped and he felt like he was not free to leave and then decline to answer a question about what provoked his apparent nervous state. He can't have it both ways. It's one or the other. And the receipt of the evidence would be for a limited purpose, not for the truth of an admission, but for the truth of what his mental state was and why he was nervous. I can't make it any clearer than that. So, if he chooses to exercise his rights, that's fine."

At that point, defendant adhered to his invocation of the privilege and refused to testify further. The court struck defendant's direct testimony in its entirety, and the parties elicited no further testimony.

The trial court subsequently determined that defendant's inculpatory statements were voluntary. The court mentioned, particularly, defendant's participation and cooperation in reviewing and correcting the written statement that Roberts had prepared as evincing voluntariness. Following a stipulated facts trial, defendant was convicted in September 1995 of two counts of rape in the first degree and four counts of sodomy in the first degree.

Thereafter, the second matter at issue in the consolidated appeal occurred. At the time the detectives interviewed defendant in August 1994, he was on probation from convictions in 1988 for sexual abuse in the first degree and harassment. In October 1994, the trial court issued an order to show cause why defendant's probation on the 1988 convictions should not be revoked, given his admissions of further crimes. The trial court deferred the hearing on the order to

show cause until the charges against defendant were adjudicated.

On September 22, 1995, following defendant's convictions for rape and sodomy, the trial court revoked defendant's probation on the 1988 convictions and ordered that defendant be incarcerated for an indefinite period not to exceed five years. In so ruling, the court explicitly relied on defendant's August 24, 1994, written statement, despite defendant's objection to the introduction of that statement. The court rejected that objection, adopting the prior ruling on defendant's motion to suppress. The court then revoked defendant's probation because of his six new felony convictions.

Defendant raises two assignments of error. (1) The trial court erred in denying his motion to suppress, in that the court improperly struck, and failed to consider, defendant's testimony concerning the alleged involuntariness of his statements. (2) The court erred in revoking his probation, because that revocation was based exclusively on defendant's convictions that are the subject of the first assignment of error. Thus, the success of the second assignment of error depends on the first.

Defendant asserts that the trial court's striking of his testimony was erroneous for either of two alternative reasons: First, the questions that he declined to answer on cross-examination were improper as outside the scope of direct examination. Second, even if those questions were unobjectionable, the striking of his testimony was an improper remedy for his nonresponsiveness, which impermissibly punished him for exercising his constitutional right against self-incrimination.

■ With respect to his first, "beyond the scope" argument, defendant contends that the state's cross-examination as to his reasons for feeling nervous during the interview did not pertain to his responses on direct examination relating to his state of mind during the interview. We disagree.

On direct examination, defendant opened the door to inquiry into his mental state, and the reasons for that state, by testifying that he "felt like [he] was trapped." Given that

response, it was entirely appropriate—as the trial court found—for the state to explore *why* defendant felt "trapped": Was it because of the physical surroundings during the interview? The detectives' conduct? Or because he had lied at the outset and, with each successive untruthful response to the detectives' questions, knew that he was "digging himself in deeper"?

Inquiry into any of those matters on cross-examination was appropriate. Once defendant's subjective mental state was "in play," it was permissible for the prosecution to inquire whether defendant's alleged involuntary statements were, in fact, the voluntary product of a guilty conscience. Thus, the court did not err in determining that the questions that occasioned defendant's invocation of the constitutional privilege were within the bounds of proper cross-examination. *See, e.g., State v. Wise*, 40 Or App 303, 307, 594 P2d 1313 (1979) (where the defendant testified on redirect examination that he distrusted his lawyer, inquiry on recross-examination as to why the defendant did not trust his lawyer was properly permitted).

Defendant argues, alternatively, that the remedy employed by the trial court—*i.e.*, striking his entire direct testimony because of his constitutionally grounded refusal to respond to questions on cross-examination—was improper. In general, in both criminal and civil cases, striking some or all of a witness's testimony may be an appropriate remedy for that person's refusal to answer questions on cross-examination:

> "Fairness and reliability in the ascertainment of guilt or innocence require that the state be allowed to impeach the credibility of defense witnesses. When a witness refuses to testify on cross-examination, striking of direct testimony is a proper remedy. Whether that remedy should be employed and how much direct testimony should be stricken depend on the relationship of the question asked and refused to be answered to the issues covered in the direct examination. The trial court has discretion in making those decisions. If the witness refuses to answer questions concerning matters directly at issue, his direct testimony (or at least the portion bearing on those issues) should generally be stricken." *State v. Pew*, 39 Or App 663, 668-69, 593 P2d 1198 (1979).

That remedy flows from a recognition that to deny a litigant the ability to cross-examine an adverse witness on statements made on direct examination subverts "an essential safeguard of the accuracy and completeness of testimony." John William Strong, ed., 1 *McCormick on Evidence* § 19 at 78 (4th ed 1995). Thus, striking testimony in such circumstances is designed to level the adversarial playing field by— to compound the hackneyed phrase—ensuring that one party is not permitted to "have its cake" (secure the benefits of direct examination) and "eat it too" (avoid cross-examination).[2]

Nevertheless, defendant argues that the striking of his testimony here was improper because it placed him in a "cruel trilemma" by forcing him to choose between either (1) answering the prosecutor's questions at the suppression hearing and running the risk of having his responses introduced at trial; or (2) refusing to answer, having his testimony at the suppression hearing stricken, and running the risk— indeed, the virtual certainty—of losing his suppression motion and having his confession and other inculpatory statements introduced at trial. Defendant asserts that *State v. Fish*, 321 Or 48, 893 P2d 1023 (1995), particularly forbids forcing defendants to make such an election. We disagree.

Defendant's argument is irreconcilable with long-established authority. For over a century, Oregon courts have consistently held that a criminal defendant who elects to testify in a criminal proceeding waives the privilege against self-incrimination as to those matters covered on direct examination and, thus, is subject to cross-examination on those matters. *See, e.g., State v. Mende*, 304 Or 18, 21, 741 P2d 496 (1987); *State v. Cruse*, 231 Or 326, 330-33, 372 P2d 974 (1962); *State v. Stilwell*, 109 Or 643, 662-63, 221 P 174 (1924); *State v. Lem Woon*, 57 Or 482, 490-92, 107 P 974, 112 P 427 (1910), *aff'd* 229 US 586, 33 S Ct 783, 57 L Ed 1340

---

[2] *See* John Henry Wigmore, 5 *Evidence* § 1391 at 178 (Chadbourne rev 1974):

"(2) Where the witness, after his examination in chief on the stand, has *refused* to submit to cross-examination, the opportunity of thus probing and testing his statements has substantially failed, and his direct testimony should be struck out. On the circumstances of the case, the refusal or evasion of answers to one or more questions only need not lead to this result." (Emphasis in original.)

(1913); *State v. Deal*, 52 Or 568, 98 P 165 (1908).[3] Each of those holdings applied the statute now codified at ORS 136.643. That statute provides:

"In the trial of or examination upon any indictment, complaint, information or other proceeding before any court, magistrate, jury or other tribunal against a person accused or charged with the commission of a crime, the person so charged or accused shall, at the own request of the person, but not otherwise, be deemed a competent witness, the credit to be given to the testimony of the person being left solely to the jury, under the instructions of the court, or to the discrimination of the magistrate, grand jury or other tribunal before which such testimony is given. The waiver of the person of this right creates no presumption against the person. *The defendant or accused, when offering testimony as a witness in the own behalf of the defendant, gives the prosecution a right to cross-examination upon all facts to which the defendant or accused has testified and which tend to the conviction or acquittal of the defendant or accused."*[4] (Emphasis supplied.)

One of the earlier decisions announced:

"[A] defendant in a criminal action, having voluntarily testified in his own behalf, may be cross-examined in relation to all facts and matters germane to the testimony given by him on his examination in chief; but, if he has made at other times statements which are inconsistent with the testimony given by him at his trial, he may be impeached by proof of such contradictory statements in the manner prescribed by statute[.]" *State v. Bartmess*, 33 Or 110, 124, 54 P 167 (1898) (citation omitted).

Subsequently, in *State v. Deal*, 52 Or 568, 571, 98 P 165 (1908), the court explained:

"[I]t must now be regarded as settled, that [cross-examination of a criminal defendant] must be confined to matters

---

[3] *See also State v. Gallo*, 18 Or 423, 23 P 264 (1890).

[4] The original version of the statute, *Hill's Ann. Laws* Section 1365, which was enacted in 1880, provided, in part:

"Such defendant or accused, when offering his testimony as a witness in his own behalf, shall be deemed to have given to the prosecution a right to cross-examination upon all facts to which he has testified, tending to his conviction or acquittal."

properly germane to and connected with his testimony in chief. In other words, a defendant cannot, under the guise of a cross-examination, be compelled, in violation of Section 11, Article I, of the Constitution of Oregon, to give evidence against himself; but, when he becomes a witness in his own behalf, he waives this constitutional guaranty as to all matters properly connected with his examination in chief, and subjects himself to such a cross-examination thereon as may tend to explain, elucidate, or affect the credibility of his testimony, and such cross-examination may be as vigorous and searching as that of any other witness." (Citations omitted.)

The Oregon Supreme Court revisited ORS 136.643 most recently in *Mende*. There, the defendant filed an affidavit in support of his motion to dismiss based on alleged denial of the right to a speedy trial under Article I, section 10, of the Oregon Constitution. At the hearing on the motion to dismiss, the state called the defendant as a witness in order to cross-examine him on the matters alleged in his affidavit. The defendant declined to testify, asserting the privilege against self-incrimination. The trial court held that the defendant, by submitting his affidavit, had waived any privilege against self-incrimination with respect to the matters asserted in the affidavit for purposes of the hearing on the motion to dismiss " 'and not for any trial on the merits.' " 304 Or at 20. When the defendant adhered to his refusal to submit to cross-examination, the trial court struck the allegations in his affidavit and ruled that, without those averments, the defendant had not demonstrated any prejudice from the delay in bringing him to trial.

The defendant appealed, assigning error to the trial court's decision to strike his testimony, arguing that "the trial court's action in requiring him to choose between testifying or having his affidavit stricken forced him to choose between asserting his right to a speedy trial and asserting his privilege against compelled self-incrimination." *Id*. at 21. The Supreme Court rejected that argument:

"The state was entitled to cross-examine defendant on the matters raised in his affidavit. ORS 136.643. This requirement does not offend federal or state constitutional guarantees against self-incrimination. By submitting the affidavit, defendant waived his privilege not to testify

concerning the matters asserted in his affidavit at the hearing on his motion to dismiss. *See State v. Stilwell*, 109 Or 643, 662, 221 P 174 (1924). Although not required to impose that sanction, the trial court did not err in striking the portions of defendant's affidavit relating to prejudice after defendant declined to testify on that issue." 304 Or at 21 (footnote omitted).

In so holding, the court observed that "the trial court correctly ruled that defendant's testimony at the hearing on his motion to dismiss could not be used against him at trial." *Id.* at 21 n 2.

■ It was appropriate here for the court to strike defendant's testimony after he refused to respond to cross-examination relating to matters addressed in his direct testimony. Moreover, the "Hobson's choice" that defendant posits by analogy to *Fish* is illusory. Unlike the defendant in *Fish*, who had to choose between performing possibly incriminating field sobriety tests or having his "self-accusatory" refusal to perform those tests admitted at trial, 321 Or at 63, defendant here is not faced with a choice between either incriminating himself or forgoing his suppression motion and, thus, effectively conceding the admission of his inculpatory statements. That is so because defendant's testimony at the suppression hearing, including his responses on cross-examination, could not be admitted as substantive evidence at trial in derogation of his constitutional right against self-incrimination. *See Simmons v. United States*, 390 US 377, 394, 88 S Ct 967, 19 L Ed 2d 1247 (1968) ("[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."); *Mende*, 304 Or at 21 n 2. Thus, there was no dilemma, much less a trilemma.

■■ Our determination that constitutional constraints did not preclude the trial court from striking defendant's testimony does not, however, end our inquiry. Although, as noted, the striking of a witness's testimony is a matter of the trial court's discretion,[5] that discretion is not unlimited. In

---

[5] *See, e.g., State v. Quintero*, 110 Or App 247, 254-55, 823 P2d 981, *on recons* 114 Or App 142, 834 P2d 496 (1991), *rev den* 314 Or 392 (1992); *Pew*, 39 Or App at 668-69.

particular, the exercise of that discretion must be cabined by, and reviewed by reference to, the rationale underlying that remedy—*i.e.*, to prevent the proponent of the witness's direct testimony from gaining an unfair advantage.

Applying that principle, we conclude that the trial court properly struck defendant's direct testimony in its entirety. After defendant asserted his right against self-incrimination, he elected not to retake the stand and, thus, rendered himself unavailable for any further cross-examination on *any* subject addressed during his direct testimony. Given that circumstance, the court's resort to a wholesale striking remedy was appropriate.

We thus conclude that the trial court did not err in striking defendant's testimony and, consequently, did not err in denying defendant's motion to suppress. Accordingly, we affirm defendant's convictions for rape in the first degree and sodomy in the first degree. Given that disposition, we similarly affirm the revocation of defendant's probation, which was predicated on those convictions.

Affirmed.