Argued and submitted February 23, 2016, reversed January 25, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BENITO MARTINEZ-GARCIA,
aka Gerado Cena Sierra,
aka Gerardo Cena-Sierra,
aka Angel Gonzalez Lazaro,
aka Angel Gonzalez-Lazaro,
*Defendant-Appellant.*

Yamhill County Circuit Court
14CR02308, 14CR05493;
A157370 (Control), A157372

389 P3d 405

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Lindsey Burrows, Deputy Public Defender, Office of Public Defense Services.

Keith L. Kutler, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**LAGESEN, J.**

Defendant was charged (or, as explained further below, alleged to be charged) with multiple offenses in six different cases. The charging instruments identified defendant by several different names. In an attempt to pin down defendant's true identity, the trial court placed defendant under oath and asked him questions about his identity. In response, defendant invoked his Fifth Amendment privilege against self-incrimination, pointing out that identity would be an issue in the underlying cases. The trial court nonetheless ordered defendant to answer its questions and, when defendant refused to answer some of them, ultimately entered two separate judgments of punitive contempt, ordering defendant to serve 30 days' incarceration in each judgment. Defendant appeals from the contempt judgments under ORS 33.125. We review for legal error, *State v. Bailey*, 133 Or App 310, 312, 891 P2d 8 (1995), and reverse.

As noted, the state brought charges in six different cases against differently named individuals. At a hearing on the cases, the state contended that defendant was the proper defendant in each case, notwithstanding the variations in name and other identifying information. Defendant, who initially appeared at the hearing by video, acknowledged through counsel, who was present in the courtroom, that he was the person that the state was alleging to be the proper defendant in each case. However, he told the trial court that identity would be an issue in the cases.

The trial court decided to determine defendant's true identity anyway, by compelling defendant to answer questions about his identity under oath:

"I am going to call each case, and I am going to put him under oath and ask him his name. And if he tells me a false name then we will go for other charges. I am not playing games."

Defendant, through his lawyer, objected to the procedure on the ground that it would violate defendant's Fifth Amendment privilege against self-incrimination. The court overruled the objection, placed defendant under oath, and ordered him to confirm his name, his birthdate, and his

parents' names in the first case against him. Defendant complied with the court's orders.

Once the trial court had confirmed defendant's identity in the first case, it explained that, with respect to the remaining cases, defendant had "an option of identifying who he is or he can proceed under a false name and end up with other charges." Defendant, through his lawyer, again objected to the procedure, and defense counsel requested that defendant be transported to the courtroom so that counsel and defendant could confer in person. The trial court again overruled the objection, but agreed to transport defendant to the courtroom so that defense counsel could confer with him before defendant responded to the court's additional questions.

After conferring with his lawyer, defendant, through counsel, again objected to the court's procedure on the ground that it violated defendant's Fifth Amendment privilege against self-incrimination. The trial court overruled the objection yet again and called the next case, asking whether the person named in the charging instrument was present in the courtroom. In response, defendant asked to invoke his right to remain silent. The trial court told defendant that he did not have a right to remain silent, and that he would be held in contempt if he did not respond. After conferring with counsel, defendant again invoked his right to remain silent and the trial court summarily held defendant in contempt, ordering him to serve 30 days in jail.[1] The trial court then called the next case, defendant again invoked his right

---

[1] Under ORS 33.096, a "court may summarily impose a sanction upon a person who commits a contempt of court in the immediate view and presence of the court." The formal contempt procedures codified in ORS 33.055, which generally governs the imposition of remedial sanctions, and ORS 33.065, which generally governs the imposition of punitive sanctions, do not apply when a defendant is held in contempt summarily under ORS 33.065. ORS 33.065. When a court employs the ORS 33.065 summary contempt process,

"a court may imposes one or more of the following sanctions for each separate contempt of court:

"(a) A punitive fine of not more than $500;

"(b) Confinement for not more than 30 days; or

"(c) Probation or community service."

ORS 33.105(3).

to remain silent, and the trial court again summarily held defendant in contempt, ordering defendant to serve an additional 30 days in jail, for a total of 60 days' incarceration for contempt. Thereafter, the court entered the two judgments of contempt that are the subject of this appeal.

On appeal, defendant contends that the trial court erred by holding him in contempt based on his invocation of his Fifth Amendment privilege against self-incrimination. The state responds that this appeal should be dismissed because it is moot. Alternatively, the state argues that defendant waived his right against self-incrimination when he, under oath, provided some of the information about his identity that the trial court ordered him to provide and that, as a result, the trial court permissibly held defendant in contempt. We conclude that (1) the case is not moot, (2) defendant did not waive his Fifth Amendment privilege against self-incrimination by providing the information ordered by the court with respect to the first case, and (3) the trial court erred in holding defendant in contempt for refusing to answer questions that defendant had a Fifth Amendment privilege not to answer. We therefore reverse the judgments on appeal.

We start with the state's mootness argument. The state points out that the 60-day jail term imposed by the trial court has long since expired, and argues that this case is moot and should be dismissed. As the state more or less acknowledges, however, our case law forecloses that disposition. In this case, the trial court imposed a punitive sanction of a jail term for each of defendant's contempts. *See* ORS 33.045(2)(b) (confinement is "[p]unitive if it is for a definite period that will not be reduced even if the defendant complies with the court's order or judgment").[2] Under *State v. Hauskins*, 251 Or App 34, 38-39, 281 P3d 669 (2012), the expiration of a term of confinement imposed as a punitive sanction for contempt does not render an appeal from the contempt judgment moot. That is because

_____

[2] Under Oregon law, there are two types of contempt, remedial and punitive. ORS 33.045 (providing for remedial or punitive sanctions for contempt). For a contempt sanction to qualify as remedial, the sanction must continue only "for so long as the contempt continues." ORS 33.105(1)(b).

> "a judgment imposing a punitive sanction of confinement for contempt \* \* \* is sufficiently analogous to a criminal conviction that it carries a collateral consequence of a stigma that is analogous to a criminal conviction and, for that reason, an appeal of a judgment of punitive contempt is not rendered moot by completion of the confinement."

*Id.*

The state nevertheless argues that *Hauskins* should not control because this case involves summary contempt. In the state's view, summary contempt is different from punitive contempt. That argument misapprehends the nature of summary contempt. By statute, contempt sanctions—whether imposed summarily or not—are either remedial or punitive. ORS 33.045. Subject to certain limits, ORS 33.096 authorizes a trial court to impose sanctions summarily when the contemptuous act occurs "in the immediate view and presence of the court." But where the contemptuous act occurs outside the court, ORS 33.055 (remedial contempt) and ORS 33.065 (punitive contempt) prescribe procedures the court must follow before issuing a contempt judgment.

Here, the conduct that the trial court found to be contemptuous occurred in court. Therefore, the court was authorized to impose punitive contempt sanctions summarily under ORS 33.096. However, the fact that the court employed summary procedures to impose a punitive sanction of confinement on defendant does not render the judgment imposing that punitive sanction any less stigmatizing than a judgment imposing a punitive sanction through the nonsummary procedures that govern when contemptuous conduct occurs outside of the trial court's presence. In other words, as we held unequivocally in *Hauskins*, the expiration of a punitive term of confinement imposed as a contempt sanction does not moot the appeal from the contempt judgment because of the stigma attached to a judgment imposing a punitive term of incarceration. This appeal, therefore, is not moot.

The state next argues that defendant waived his Fifth Amendment privilege against self-incrimination when he acquiesced to the court's orders to provide identifying information about himself in the first case. Citing *State v.*

*Lea,* 146 Or App 473, 482-83, 934 P2d 460, *rev den,* 325 Or 438 (1997), the state argues that "[i]t is well-settled that a criminal defendant who elects to testify in a criminal proceeding waives the privilege against self-incrimination as to matters covered in defendant's testimony."

The state is right that a defendant who elects to testify waives any Fifth Amendment privilege on cross-examination with respect to the matters to which the defendant testified on direct examination. *Brown v. United States,* 356 US 148, 155-56, 78 S Ct 622, 2 L Ed 2d 589 (1958); *Lea,* 146 Or App at 482-83. But defendant did not make a choice to testify in the sense contemplated by *Brown*; the trial court, in effect, made that choice for him. The rationale in *Brown* "applies to a witness in any proceeding who *voluntarily* takes the stand and offers testimony in his own behalf." *Brown,* 356 US at 155 (emphasis added). Here, defendant took the stand only after the court overruled his Fifth Amendment objection, ordered him to submit to the oath, and questioned him about his identity. Under those circumstances, defendant cannot be said to have voluntarily elected to testify in a way that waived his Fifth Amendment privilege.

Apart from its mootness and waiver arguments, the state does not otherwise suggest that the Fifth Amendment permitted the process employed by the trial court, and we conclude that it did not. The Fifth Amendment's Self-Incrimination Clause[3] provides: "No person shall be * * * compelled in any criminal case to be a witness against himself." US Const, Amend V. That clause afforded defendant an absolute right not to testify against himself in the criminal cases against him. *See Michigan v. Tucker,* 417 US 433, 440-41, 94 S Ct 2357, 41 L Ed 2d 182 (1974) (noting that Fifth Amendment right "has been given broad scope" in circumstances "[w]here there has been genuine compulsion of

---

[3] Neither party has developed arguments under Article I, section 12 of the Oregon Constitution. Because the parties focus solely on Fifth Amendment analysis, we do the same. *See Redwine v. Starboard, LLC,* 240 Or App 673, 682, 251 P3d 192 (2011) ("Accordingly, although we typically consider arguments raised under the Oregon Constitution before considering those raised under [the] federal constitution, we will focus on the privilege as it applies under the Fifth Amendment." (Internal citations omitted.)).

testimony"). Yet the trial court compelled defendant to do exactly what the Fifth Amendment afforded him a right not to do: submit to an oath and testify in the criminal cases against him. In addition, beyond the fact that the court required defendant to take the stand to resolve the issues surrounding defendant's identity, it is readily apparent that the information sought by the court would have tended to incriminate defendant either in the pending cases (by confirming that the state had identified the correct culprit on the charges) or by subjecting him to further charges for providing false information about his identity (given that defendant apparently had been using different names, an admission to his true name would be tantamount to an admission that the other names were false).[4] Indeed, the court repeatedly stated that it would seek further charges against defendant if he was "using false names."[5] Under those circumstances, the court erred in overruling defendant's Fifth Amendment objections and in holding him in contempt when he refused to supply the information demanded by the court. *See Redwine v. Starboard, LLC*, 240 Or App 673, 675, 251 P3d 192 (2011) (reversing contempt judgments based on contemnor's failure to answer questions during judgment debtor examination where answers to questions would have exposed contemnor to criminal liability).

Although defendant's apparent use of multiple names, together with the multiple charging instruments, presented an administrative challenge for the trial court, the Fifth Amendment does not permit a court to resolve such a challenge by compelling a defendant to take the stand and testify, on pain of contempt, to information that may strengthen the state's case against him or expose him to further criminal liability. *Tucker*, 417 US at 439-44 (explaining

---

[4] The trial court appeared to believe that a criminal defendant may never invoke the Fifth Amendment right against self-incrimination in response to a request to identify himself. Although we can envision circumstances in which a criminal defendant would not have a basis for invoking the Fifth Amendment right against self-incrimination in response to a trial court's questions about the defendant's identity, those circumstances were not present here.

[5] We note that the prosecutor, who would have been responsible for making any charging decisions, did not suggest that the state would pursue such charges against defendant. The state does not suggest that that fact has a bearing on our analysis.

that the Self-Incrimination Clause of the Fifth Amendment protects a criminal defendant from the "cruel trilemma" of having to decide whether to answer a question truthfully and incriminate himself, commit perjury, or remain silent and face contempt).[6]

Reversed.

---

[6] We note that at a prior hearing, the trial court was able to address the difficulties presented by the different names used in the different charging instruments through conversations with the prosecutor and defense counsel.